of America. Argument not to exceed 17 minutes per side. Mr. Metwinsky, you may proceed to the appellate line of writing. Oh, I apologize. Samantha Goldstein, you may proceed to the appellate line of writing. Good morning, Your Honors, and may it please the Court, I'd like to please reserve three minutes for rebuttal. This Court can easily write an opinion ruling for Mr. Bullard based on the drug-type mismatch between Arizona and federal law. Arizona law criminalizes two substances not on the federal schedules, but as multiple federal circuits had held in published opinions even before Mr. Bullard was convicted and sentenced. But we've never held that in a published opinion, right? That's correct. And in fact, in unpublished opinions, we've gone both ways, right? The Smith decision went the other way, but it was after Mr. Bullard was convicted and sentenced. I think that's a fair point, and I'll ask your friend on the other side about that, but if Smith went the other way, how can it be deficient and potentially even prejudicial, but how can it be deficient for counsel to raise it? Because the standard for deficiency is pretty hard, and you're talking about judges going the other way on our Court. Yes, so at the time Mr. Bullard was convicted and sentenced, all of the federal courts who have addressed the question had ruled that the term controlled substance means federally controlled substances only, and that result is dictated by all indicators for interpreting the text, so it's important to look at the term in context. The starting point is the fact that the guidelines expressly direct that they aim to achieve uniformity in federal sentencing. The Supreme Court's categorical approach, long applied by this Court as well, makes clear that for federal sentencing enhancements, undefined terms... I understand all that, and I think this is a really good argument, and you're starting, in my opinion, with your best, but what I struggle with, right, is to say, do you understand my struggle, which is you're asking us to fault counsel and potentially subject them to bar sanction for being ineffective when judges on our Court have said this argument doesn't pass muster, in essence, right? You see where my struggle is? In the Smith decision, the Court did not address many of the arguments raised in our briefing, and so that is one reason to distinguish that case. When all of the arguments in favor of our interpretation of the term controlled substance are taken into account, it's clear that that term means federally controlled substances only. Again, the purpose, the guidelines, the categorical approach, the Jerome presumption as well, all of these things point in the same direction, and the fact that all of the Courts in published opinions have reached this result confirms that analysis. So the judges on our Court that have gone the other way, they would be unreasonable under Strickland-Prong Law? They would have been acting unreasonably? Again, they didn't address, at least in the opinion in Smith itself, all of the arguments raised here. They only looked to the fact that the term state law is included in 4B1.2b, which as we've shown in our briefing, does not establish that the term controlled substance takes a state law-dependent definition. Importantly, as the government agrees, the under-federal or state law language modifies only the term offense. It doesn't answer the question what kind of offenses qualify. It simply makes clear that both prior federal convictions and prior state convictions can qualify. What about the divisibility argument regarding the Arizona statute? All of the indications under Arizona law are that the statute is indivisible by drug type, and Taylor and Mathis demand that this Court be certain before proceeding to the modified categorical approach. What about the cases they cite from Arizona, though, that seem to suggest that you could be convicted of a heroin and a cocaine offense, both under that separate counts under that statute? So the fact that you can be convicted of multiple convictions for multiple drugs simply shows that that's a sufficient basis for affirming multiple convictions. It doesn't answer the question whether it's necessary in the first place for a jury to find a drug type in order to convict on any one count. I think the Arizona Court of Appeals decision... Wait, walk me back on that. I'm sorry. If you had a count for heroin and a count for drug type under Arizona law to convict? For any one conviction, you would not need to find the drug type. The statute doesn't list drug type. It lists only narcotic drug. When the Arizona courts list the elements of a 13-3408 offense, they do not list the type of drug. They hold that it's enough for the state to prove that a defendant knew he possessed a narcotic drug, not that he knew which particular drug he possessed. So can I ask you a different question, which is, at what point... So you've got three circuits, right, pre-sentencing. Am I right about that? What if there's only one circuit? Is counsel deficient if they don't make the argument? That would certainly be a different case, but here you have the three circuits all reaching the same conclusion. So at what point does it become deficient? Like, how do we draw the line? Because we've always said, right, this counsel doesn't have to be effective. Sorry to use the word effective because it's kind of weird, but to be effective, they don't have to predict changes in the law or predict developments in the law. And so what I struggle with is, how do we draw that line? And obviously there's the flip side question for your friend, but how do we draw that line? So here, I would say that here you have a clear-cut case of deficient performance. You not only have multiple federal courts of appeals ruling our way, but there's no precedent from this court ruling the other way at the time of sentencing. At the same time, there's case law from this court interpreting the sister provision to 4B1.2B, that's 4B1.2A. So if you say if there's three and one, you would say no deficiency, right? If there's a some kind of split. I think it would depend on the case, but that's just not this case. Why would it? I understand it's not this case. You've obviously got a better case than that, but I'm trying to figure out where that line is, if that makes sense. In other words, how do we, if we're saying deficiency, how do we draw the line for future cases? What if there's district courts going the other way? That also would be a different case. There are certainly Supreme Court cases granting relief where there's been a circuit split on an issue like this, and they can rule that there's deficient performance. Just because one or two judges ruled the other way doesn't mean that the arguments aren't strong enough, that reasonable counsel should have at least raised the argument before the district court or at least to preserve for appeal. What about the fact that this whole thing is hard, right? The categorical approach, I mean, I've been struggling with it forever. What about that it's just difficult, like the divisibility point, all these points that you have to jump through, all these hoops. Does that excuse counsel in any way? No, it does not. We're trained lawyers. Lawyers have responsibility to understand the categorical approach, and again, given the clear precedent ruling our way, both out of circuit and the 4B1.2B shows that it was ineffective assistance of counsel here. Just returning to this court's 4B1.2A case law for a moment, this court has held that that section takes uniform federal definitions, and ruling for us in this case on the term controlled substance is the only approach that's consistent with those rulings in cases like Cooper and Hopskin. So 4B1.2A defines the term crime of violence as an offense under federal or state law that is certain enumerated offenses, and notwithstanding the under federal or state law language, this court has held that those enumerated offenses take generic uniform federal definitions. So I'd like to turn for a moment to the Havis argument since... So you're asking us, so we have to resolve the mismatch question. Smith, we haven't resolved it yet as a circuit, right? This circuit has not resolved it in a published opinion. We would have to do that, right? This court could rule on that basis. In order to find prejudice, Strickland prejudice, we have to say the mismatch argument is a good argument, right? Correct. Just to be clear that you wouldn't necessarily have to rule for us on the drug type mismatch in order for Mr. Bullard to win. You could also rule for us on the conduct mismatch argument, either directly or based on ineffective assistance of counsel. So the fact that there were several district courts in the Second Circuit that went the other ways, in your mind, not of consequence? Correct. Given the strong federal circuit court authority, and again, the clear arguments under Supreme Court precedent, the text of the guidelines, the Jerome presumption, which this court had long applied to the guidelines, all indicators that this is the correct interpretation of the term controlled substance. It was clearly ineffective assistance for counsel to not even raise the argument for Mr. Bullard. I'd note that the plea agreement expressly preserved his right to challenge the career and yet counsel did not challenge it in the PSR, did not challenge it at sentencing, and did not challenge it on appeal, and indeed did not raise any challenge to the sentence on appeal. So clearly this was not a case of strategy, it was a case of a failure to make a very obvious legal argument. So the government agrees that under Havis, Mr. Bullard's Arizona conviction is not a predicate controlled substance offense under 4B1.2b, and Havis applies to this case. The Teague framework only bars the retroactive application of new procedural rules, but there's two reasons that's not a bar here. First, Havis is an old rule. It was dictated by long-standing Supreme Court precedent, Stinson and Mistretta, on the books for decades, that this court had long applied as well. In the Alexander case, for instance, in 1996, this court invalidated commentary- Just a simpler answer, our Snyder case, that these guidelines challenges are just not cognizable under 2255. So that's a separate question, whether it's directly cognizable under 2255 or not. And Snyder, in our view, does not pose a bar to this court hearing Mr. Bullard's guidelines claims directly. And that's because, importantly there, the defendant's advisory guidelines range would not have been different without the designation. Here, however, the range was significantly increased by virtue of the designation. And if you look to the Supreme Court's cases in Pugh, Molina-Martinez, Rosales-Mireles, it's clear that the advisory guidelines range dictates, to a very real extent, defendant's sentences. So district courts must consider the advisory guidelines range when sentencing a defendant. That's mandated by statute. They have no discretion not to do that. And the Supreme Court has recognized time and again that this sentencing range is the lodestone of federal sentencing. And that- So I agree with all that, but the Supreme Court in Beckles treats the guidelines differently. I mean, the advisory guidelines have always been treated differently than everything else. And every circuit that I could find that's looked at it has said these challenges aren't cognizable under 2255. Respectfully, Beckles doesn't change anything in this regard. Importantly, in Section 3 of the Supreme Court's opinion, it made clear that the advisory guidelines are not immune from constitutional scrutiny. And in doing so, it had pointed to a very important precedent, Pugh, which held that retrospective application of advisory guidelines range to a defendant can give rise to an ex post facto challenge. And that's because there's a significant risk that the defendant will then be subjected to a higher punishment. And that's the very same reason that substantive rules apply retroactively under Teague, and the same reason that this court should find it's a miscarriage of justice for a defendant to be subjected to a career offender designation and a higher advisory guideline sentence based on an incorrect, unlawful, and unconstitutional application of the guidelines. Any further questions? Judge Katz? No. Thank you. Thank you, counsel. Good morning, your honors. Becky Lutzko on behalf of the United States. Your honors, I believe you keyed in on the primary and key thing that you need to consider in as far as deciding this case, which is that the defendant's primary claim, both below and that they've presented here, is not properly before this court. The claims are not cognizable. That because they are sentencing guideline claims, this court held in the Snyder case and held previously in Grant and Jones, even though those were procedural default cases, they nonetheless provided, used the same standard, the fundamental miscarriage of justice. Why did you cite Snyder in your first brief? Your honor, we didn't, I'd have to look at the timing of when Snyder came out versus when our brief was filed, but I did note that we did cite Grant. And Grant held the same thing again in the procedural default. A little bit different. Grant's a little bit different. It is a little bit different because it is a procedural default case, but nonetheless, when you look at what is cognizable under 2255, it's constitutional matter or claims of constitutional errors, claims of jurisdiction, and then everything else has to meet that same fundamental defect that results in a miscarriage of justice. And that is what Grant held, that the guidelines, you know, guidelines claims or misapplication of guideline claims simply do not. That would take care of the Havis, all of the Havis discussion too, right? It does. It does. It actually resolves both. Cognizable to begin with. Correct, your honor. And so, it applies not only to the original claim here, which the government did point out in its initial brief, and it pointed out also to the district court below. The district court below did not address the government's argument about cognizability at all. It just went directly to the merits. What about their argument about Snyder and about the way that this case, it affects the range in this case in a way that it did not in Snyder? Well, your honor, back to Teague. What Teague is looking at is whether it's a substantive rule, right, or whether it's a watershed procedural rule. And as your honors are well aware, the only watershed procedural rule that any court has ever found was Gideon v. Wainwright. So when you get to the question of substance, the guidelines are advisory. And the guidelines do not set, while the guidelines set parameters for the district court to look at, ultimately they are just advice. And they do not set the range of punishment. That's what the statute does. And that's why Johnson in the ACC- If it's not a substantive rule, what is it? It's a procedural rule. In fact, this court in the Gibbs case, which is Gibbs v. United States, 655-4- Don't substantive rules prohibit punishment for a class of defendants? Substantive rules, when the court has been talking about prohibiting punishment for a class of defendants, mentally retarded individuals or juveniles are not subject under the Eighth Amendment to a death penalty. That's the type, that's the class we're talking about here. Here we're talking about an application and an interpretation of the guidelines. And in the Gibbs case, which was 655-F-3-473, specifically pinpoint 479, and it's Sixth Amendment, the guideline calculations only challenge the legal process used to sentence a defendant. And so that they do not raise the argument that the defendant is ineligible for the sentence. So this court has already recognized exactly that. And I think that's confirmed by Gall, by Rita, by the fact that sentencing errors, when you calculate those, are viewed as procedural reasonable questions, not substantive reasonable questions. Can I move you to what I think, unless either of you have more questions about this, what I think is their best argument, which is this mismatch and the fact that three circuits had indicated this and yet this was never raised in any form. Isn't that deficient and arguably prejudicial when everyone's going the same way? I would say no, Your Honor, for a number of reasons. First of all, the three circuits, the Gomez-Alvarez in particular was referring to 2L, 1.2 or 1.1 in the guidelines, which relates to unlawful entry. And therefore, when you look at what that statute, or that would relate to the INA. And the INA in particular relates, has a definition of a controlled substance that ties it to the federal controlled substance. So it makes more sense in that Gomez-Alvarez context and then in the 2L context to be looking at what the federal controlled substance statute is. But here, there is no controlled substance definition and I think the plain language of that text, although there are other cases, Townsend wasn't decided at that time and the other cases were interpreting, I believe it was the under 2K, but I concede certainly that they rely on the 4B definition. But nonetheless, when you look at that plain language of the statute, I believe it's very clear. We're talking about a state offense. And what is a state offense? A state offense criminalizes the various controlled substances that they've determined to be controlled and illegal to transfer and possess. And I would note that it's different when you're talking about this, or the idea in the career offender, the idea in the 2K1.2 analysis, is that this defendant has a prior conviction for these things and therefore is a recidivist here and therefore is being punished. So to look at that state... This is just one way of saying that these types of crimes don't fit what we're trying to punish. So think of the crime of violence context, where we struggle every day with what's a crime of violence. And there's certain crimes the Supreme Court, through the categorical approach and otherwise has informed us, don't fit that category, so they don't qualify. And the argument is, this doesn't fit, so it doesn't qualify. And it's obvious because other circuits are talking about it. Whether in the INA context or the criminal context, they're talking about it. And even the Supreme Court kind of has monkeyed with the INA in the same way they've monkeyed with the criminal guidelines and the ACCA. They've all kind of come together in this analysis and they're saying, look, all we're saying is, his attorney should have raised it, because this had severe consequences for him. And I think the answer to that is twofold. Number one, the attorney, if the attorney, the attorney made a strategic decision in this case to focus on the defendant's background, on his dysfunctional family, on his growing up. I mean, I was a sentencing judge. You can focus on both. You should get the guidelines. So you can do that in the 3553 area. But in the guidelines area, you should first minimize the guideline exposure. And Your Honor, while I don't disagree with you, I think here that the second part to that answer is that given the plain text and given that the text refers to the state offense, federal offenses or state offenses for controlled substance violations, that attorney was reasonable and certainly did not fall below the deficient performance. So at what point, what if every circuit but ours went the other way? Are they, like, where's the line? I think that's a very difficult question to answer, you know, where's the line. And certainly if it's a question, you know, if it's an answer within our circuit, then But we've got to give defense attorneys notice, where's the line? I mean, is it five circuits? Is it seven? Is it three? Is it one? I mean, what is the line where it becomes deficient not to raise an argument that is being raised everywhere, for example? Well, I would note, Your Honor, that in all three of those cases, none of them did refer specifically or were not 4B1.2 cases. They were 2K or they were 2L. Why would they negotiate in the plea agreement a specific carve-out for an armed career criminal challenge? I mean, it seems Or for career offender. Yeah, or for the career offender. I'm sorry. I was thrown off my act, I think. So you negotiate for that, and then you, do you not even look at this? Why are you not raising this? Why do you negotiate for these carve-outs? Because we all know these plea agreements, I mean, you fight about what you can raise later. You've got appellate waivers and all this stuff, and they say, I want to preserve this career offender challenge, and then you don't raise anything? I think in the plea negotiation process, and I can't speak because I was not personally involved, but nonetheless, I can say that in that negotiation process, there's a give and take, and also that information is not complete at the time that negotiation is being had. And therefore, I don't know how many of the, how many, he had numerous convictions, as you can see from the PSR, and so I don't know whether counsel was fully apprised of every single conviction to include an out-of-state conviction and the parameters of that at that point, or not. Isn't it too much to ask that counsel become familiar with the convictions and the law especially in the career offender? Because as you and I both know, it takes ordinary guidelines, and the multiplier effect is great. And I get your point about background and stuff, but it seems to me that's a secondary argument because as your friend on the other side rightfully says, the guidelines are, I mean, I said that in Havis, the guidelines are the lodestar. That's where you start. And it's a weight on judges, as we both know. It absolutely is, Your Honor, and it's absolutely a requirement to calculate those guidelines correctly, and I would not dispute that in any way. But I do believe that given the plain text, as three judges on this very circuit reviewed in Smith and looked at in Smith, and they said, this one's easy, right? In Smith, the government did argue that the Illinois statute was divisible by drug. The government spent a lot of time in their brief making that very argument, and the government said, we don't need to decide that. They didn't decide that because they looked at the plain language and viewed it as the state offense and the state-controlled substance offenses, I'm sorry, the state-controlled substance schedule as being part of that offense. And therefore, they decided the question without giving the divisibility argument any, certainly any ink in the opinion. Now, I do certainly recognize that in the Pittman case, this court did go to the divisibility issue and then looked at whether those, whether the drugs were divisible, I'm sorry, the schedule was divisible by drugs or that the crimes were divisible by drugs, and found that in the case of Michigan, I believe based on case law and treatment, similar to how Arizona treated their, treats the different drugs, that it was divisible. And in Pittman, they don't mention Smith. It's, you know, so we've got two ships, I think, that have, you know, sailed past one another on that. But nonetheless, when you get back to the question of deficient performance, when you have three judges on this circuit who don't believe that this is even merits ink in their brief, I don't think you can say that counsel was deficient for not raising it and instead choosing to focus quite effectively on background. Can we look at that in hindsight and say it turns out, when was, Smith was post? Post. Twenty-eight, twenty-seventeen, but after the sentencing. It is. It is. You're right. You're correct. But it, so it's not that counsel said, oh, you know, looked at Smith because Smith was not resolved and relied on that. But what I'm saying is that you've got three jurists on this circuit who are looking at the same. They failed Strickland prong one. Exactly. Exactly. That's what you would say. Yeah. They failed Strickland. Exactly. I don't know if you want to tell Judge Gibbons that, but, or Judge Daughtry, but, but yes. The, and again, you know, as, as the sentencing transcript makes very clear, the counsel made a very effective argument to this court. The court reduced a sentence from a range, I believe it was 292 to 360, to 140 months. And he was at the low end, 120 months was the minimum sentence that this judge was able to impose. And so to say that counsel behaved deficiently by not recognizing or not forwarding an argument that this court itself, at least part of this court has rejected. I don't think you can draw that line. I also would note that as your Honor, I believe pointed out in the Snyder court case makes clear that you look at, you know, what is going on at the time, as opposed to in hindsight or in retrospect. So again, you have to. Right. But at the time, three judges hadn't ruled that way and every circuit judge to rule, right? There wasn't, in those other three cases, there's not even a dissent, is there? I would have to check. Okay. Let's just say almost every, every circuit had ruled that the mismatch theory was a good one. Well, one in the context of, yeah, 2L and in that one they went to divisibility. And here you've got Arizona treating in one case, three different drugs in one pill bottle as three separate crimes. And so I think that informs again, you know, we would, that is our secondary argument. We believe that the text would plainly indicate that the state controlled substance schedule is what governs. But the secondary argument would be that Arizona is in fact treats them as divisible and that you would have to, and that would be sufficient under Pittman to again find that counsel performed effectively or certainly had no, wasn't deficient in not raising the argument, I think is the better way to phrase that. Does Smith even acknowledge the contrary authority? I don't remember. I don't. Was there a discussion in Smith like, oh, we know these other circuits have gone this way? Were, I mean, was there really a considered argument in that case? It's unpublished. Were they, I'm wondering if those, if they gave it the. I don't believe that they cite Gomez-Alvarez or Leal. I don't, I don't believe that they cite it. I would have to double check. They did focus in there, however, also on rejecting an equal protection challenge to the different state scope. So that was, you know, it was another part of their analysis. But the direct answer to your question is, while I'm not 100 percent, I don't think they did. Sounds deficient. Pull out Strickland. I think you also get to tag Judge Moore as a Strickland deficient lawyer. Let's see. I do want to spend a little bit of time on. Your time. Oh, I apologize. So, do you have any, any further? Yeah. Okay. So if I can just wrap up, I would say only that the government believes, for the reasons in that, in its initial brief, that this court should find there was not ineffective assistance counsel. That Havis would affect, per the supplemental Rule 28J, the government, 28J letter the government filed, that Havis, under Havis, this conviction would be invalid because it is an incomplete offense given the two statutes. And that, further, that Havis issues are not cognizable nor retroactive. Okay. Thank you, counsel. Thank you. Ms. Goldstein, you have three minutes. I would just like to make two quick points. The first is on the question whether Havis is a substantive ruling that applies retroactively. My colleague on the other side referenced the Montgomery ruling, which held the Supreme Court's Miller rule retroactive. Miller had held that it prohibited mandatory life without imprisonment for juvenile homicide offenders. And in that case, the state argued that Miller could not be substantive because it didn't mean that juvenile offenders could never be subjected to mandatory life without parole. And the Supreme Court explained that that argument confused a procedural requirement meant to implement a substantive ruling with a procedural rule that actually regulates the manner of determining a punishment or sentence. So that argument, that case clearly demonstrates that here, where there's a significant risk of a higher punishment based on an unlawful interpretation of the guidelines, it's a substantive rule if it's a new rule at all. Second, I'd just like to turn back to the ineffective assistance of counsel claim based on the drug type mismatch. The government previously acknowledged that 2L1.2 is materially indistinguishable from 4B1.2. So the case in multiple federal courts had recognized that in published opinions. So clearly, those prior precedents were relevant to this question. The judges on the Smith panel were not Strickland ineffective assistance standard. They didn't fail in that regard. Again, the opinion did not address the contrary authority. It did not address the purpose of the guidelines. It did not address- I guess the key there is right. It doesn't matter. Your argument would be it doesn't matter for deficiency. But why wouldn't it matter for prejudice? In other words, how can we say that the outcome would have been different when we know a panel of our court has said otherwise? Because for all of the reasons explained in our brief and during this argument, it's clearly correct that the term controlled substance means federally controlled- But even if we- I'm sorry to interrupt you, but even if we agree with you on that, you understand what I'm saying? How can we say- Let's say I, as if de novo matter, would agree with you. How can I say that counsel was both deficient and prejudiced when I- That's what I- Just to be very candid, that's what I'm struggling with, when three judges of our court said otherwise. Again, those arguments that are made in our brief, which counsel should have raised at Mr. Bullard's sentencing and on appeal, convinced three other federal courts of appeals at the it was the correct ruling, so there's clear prejudice. It's clearly correct that the term controlled substance means federally controlled substances only. And again, it resulted in a higher guideline range for Mr. Bullard. The court made clear that when she sentenced Mr. Bullard to 140 months in prison, that was still an extremely long sentence, and her sentence was clearly anchored in the guidelines. So there's every indication, and at the very least, a reasonable probability that- So the argument is that the attorney who was behaving reasonably would have made all of the best arguments, and then by the time it got to the stage where Smith was, those arguments would have carried the day, and therefore, there's prejudice. Yes, that's correct. I think they're not- These aren't arguments that were hidden away or not obvious. It's clear based on how the Supreme Court and this court has always applied the categorical approach and how it's approached many, many other federal guidelines. Yes, but Smith's counsel didn't raise that they, too, were deficient, right, and prejudicial. Even though they raised some of the arguments, at the very least, and lost. Perhaps there was some strategy in that case, I don't know, but clearly in this case, the failure to raise those obvious arguments was not only deficient, but prejudicial performance for Mr. Bullard. We respectfully ask that the judgment below be reversed in this case, remanded for resentencing without application of the career offender enhancement. Thank you, counsel. The case will be submitted. Counsel, thank you both for your excellent arguments. Ms. Goldstein, I especially want to thank you. I know you all took this on on behalf of our circuit. We greatly appreciate it, especially all the briefing and the extra briefing we asked for. It was all excellent, and you should be proud of the work you did, and we are definitely happy to have you, and we hope you'll come back. Thank you.